IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ELESSA FREELINGOS,

                     Plaintiff,

v.

EB5 GLOBAL IRVING, LLC, an Oregon
limited liability company,

                     Defendant.

_____

Case No. 3:23-cv-00759-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

       Plaintiff brings this action for breach of contract and alternatively breach of the implied covenant of good faith and fair dealing.  Plaintiff seeks summary judgment as to her breach of contract claim and defendant moves for summary judgment as to all claims.  For the reasons stated below, plaintiff's motion is granted, and defendant's motion is denied in part.

<u>BACKGROUND</u>

       In 2017, defendant EB5 Global Irving, LLC, as the general contractor, along with its developing partners identified an opportunity to invest in a hotel to be located in Portland, Oregon. To that end, the developers proposed to:

develop, construct and operate a 232-room luxury hotel located in the Pearl District of Portland, Oregon, to be known as the Portland Proper Hotel. The Project is located at 1202 NW Irving Street, a 20,000 square foot parcel on the southeast corner of NW Irving Street and NW 13th Avenue. The Project Owner was formed to acquire the Property and develop the hotel. The Project Owner will be managed by WDA Irving Hotel Development, LLC, an affiliate of Williams/Dame & Associates ("WDA"), and EB5 Global Irving LLC, an affiliate of EB5 Global, Inc. ("EB5 Global"). WDA is renowned as one of the best developers on the U.S. West Coast. EB5 Global will manage the EB-5 offering and compliance with the EB-5 Program requirements.

Declaration of Matthew Brown at Ex 1 (ECF 43-1), p. 17.

In 1990, Congress created the EB-5 Visa Program as one of five categories of employment-based immigration preferences to "create new employment for U.S. workers and to infuse new capital into the country." S. Rep. No. 101-55, at 21 (1989). In 1991, the Immigration and Naturalization Service ("INS")— United States Citizenship and Immigration Services' (USCIS) predecessor agency—promulgated regulations to implement the EB-5 Program. See 8 C.F.R. § 204.6. Pursuant to these regulations, to be eligible for an EB-5 visa, an alien must "invest[ ]" a certain amount of "capital" in a "commercial enterprise" to "benefit the United States economy and create full-time employment for not fewer than [ten] United States citizens, United States nationals, or aliens lawfully admitted ...." 8 U.S.C. § 1153(b)(5)(A).

Plaintiff is a citizen of Australia who in 2018 sought to obtain a path to permanently reside in the United States. Declaration of Elessa Freelingos (ECF 40) at ¶ 3. EB5 Global provided plaintiff with a set of offering documents to participate in its EB-5 program by investing in the Portland Proper Hotel. ECF 39-1, Ex. B at EB5 2407. The document presented an opportunity to invest a minimum of $500,000 plus a $50,000 administrative fee to participate in the program and become a limited partner. ECF 39-1, Ex. C at FREELINGOS000003.

Plaintiff signed the partnership agreement and made the required contribution on September 16, 2018. ECF <u>39-1</u>, Ex. C at FREELINGOS000095.The partnership agreement provides, in part,

> In the event that any subscriber's subscription is not accepted, or the Offering is canceled or terminated, **or any Limited Partner's I-526 petition is denied by USCIS, or the Limited Partner's adjustment of status to conditional permanent resident is denied, or the Limited Partner's immigrant visa or initial admission as a conditional permanent resident using such visa is denied** (except for reasons of fraud, misrepresentation, failure to cooperate with USCIS, or abandonment of the I-526 petition by such Limited Partner, or a failure to timely file or reasonably prosecute the I-526 petition), **to the extent of available funds, the Partnership shall use commercially reasonable efforts to return the Capital Contribution and Administrative Fee to the affected Limited Partner(s).** In the event USCIS rejects any Limited Partner's I-526 petition, immigrant visa or initial admission as a conditional permanent resident for reason of fraud, misrepresentation, failure to cooperate with USCIS, or abandonment of or failure to timely file or reasonably prosecute the I-526 petition by such Limited Partner, to the extent of available funds, the Partnership will use commercially reasonable efforts to return any remaining unpaid balance of the Capital Contribution to such Limited Partner, but the Partnership reserves the right to retain all or any portion of such Limited Partner's Administrative Fee, in the General Partner's sole discretion. **There is no guarantee that the Partnership shall have the ability to repay all or any portion of any Limited Partner' Capital Contribution or Administrative Fee, or the time period within which such amounts will be repaid, and Limited Partners could lose up to the entire amount of their Capital Contributions and/or Administrative Fees.**

ECF <u>39-1</u>, Ex. C at FREELINGOS000073 (emphasis added).

The offering documents did warn investors:

> Investors who fail the I-526 process or other visa process may request a refund of their investment and the Partnership shall honor such request to the extent that it holds available funds to repay the Investor's Capital Contribution. If the Partnership has insufficient funds, the Partnership will use commercially reasonable efforts to repay the Investor's Capital Contribution. **In that event, the Partnership will seek to replace any such withdrawing Investors with other Investors. However, there is no assurance that the Partnership will be able to do so, which may result in a failure to raise desirable or adequate amounts of capital needed to fund the Project.** Even if the Partnership is able to seek a replacement Investor, the lengthy timing of the visa process may delay the Project.

ECF <u>39-1</u>, Ex. C at FREELINGOS000032 (emphasis added).[1]

The partnership agreement is a fully integrated agreement. ECF <u>39-1</u>, Ex. C at FREELINGOS000089. Distributions from the project, including upon dissolution, are to be made to limited partners "pro rata in accordance with their capital contributions, until each Limited Partner has received aggregate distributions equal to his or her accrued and unpaid Preferred Return, plus any accrued and unpaid Bonus Return owed to such Limited Partner." ECF <u>39-1</u>, Ex. C at FREELINGOS000077. Except, as noted above, where a limited partner's I-526 is denied, no partner shall have the right to seek to withdraw from the partnership or to require that the partnership redeem all or any portion of such partner's interest. ECF <u>39-1</u>, Ex. C at FREELINGOS000074.

In February 2019, plaintiff submitted a form I-526 petition to USCIS. Declaration of Elessa Freelingos (ECF <u>40</u>) at ¶ 3.

The COVID 19 pandemic presented challenges to hotel development starting in 2020 particularly in light of civil unrest in downtown Portland and wildfires at the time. Declaration of Matthew Brown at Ex 2 (ECF <u>43-2</u>), Ex. 3 (ECF <u>43-3</u>). Consequently, the project faced a multi-million-dollar funding gap by December 2022. Declaration of Matthew Brown at Ex 6 (ECF <u>43-6</u>) at p, 3 (financing at only 56.5% of needed capital).

On October 31, 2022, the USCIS denied plaintiff's petition. ECF <u>39-1</u>, Ex. E at FREELINGOS000200. Accordingly, on December 5, 2022, plaintiff requested a return of her investment. ECF <u>39-1</u>, Ex. F at EB5 000114. As of that date, 42 of the 52 limited partners needing petition grants were denied or were in limbo due to evidentiary issues with the USCIS. Declaration

---

[1] The offering memorandum also warned of other general and specific hotel risks such as changes in market conditions, availability of funds, cost increases due to inflation, and reduced hotel demand. Declaration of Matthew Brown at Ex 1 (ECF <u>43-1</u>), p.46.

of Matthew Brown (ECF 43) at ¶ 11. Plaintiff is the only limited partner to request a refund as a result of the denial. Id.

Defendant denied plaintiff's request for a return of her contribution because she authorized an appeal of her denial (and return of her contribution would invalidate the appeal) and because it claimed it did not have available funds. Declaration of Matthew Brown at Ex 8 (ECF43-8); Ex. 6 (ECF 43-6) and ECF 39-1 at Ex H:

> [T]he Partnership recently issued an Investor Update dated December 9, 2022, a copy of which is included with this response. In that Investor Update, the Partnership gave a detailed report of the financial status of the Partnership and the options available to the Partnership at this time. The Partnership further requested a response from all Limited Partners of the Partnership of their preference regarding the options available to the Partnership at this time.
>     For the reasons stated in the Investor Update, the Partnership is not able to return the investment funds of select Limited Partners without jeopardizing the rights of the other Limited Partners. However, as also indicated in the Investor Update, the Partnership is actively pursuing actions that it believes are in the best interest of all Limited Partners.

Plaintiff notes that the referenced update indicated $6,500,000 cash on hand. At the time, the budget stood at $150,700,000 with $26,000,000 in EB-5 equity, $1,800,000 in private equity, and terms for $57,400,000 in loans representing about a $65,500,000 budget gap. ECF 43-6 at p, 3. Defendant restructured the budget, sought alternative financing, and even presented a project redesign, but was unable to reduce the equity gap. Declaration of Matthew Brown (ECF 43) at ¶ 13-16.  Accordingly, the partnership dissolved in December 2023 and began making distributions on a pro rata basis. To date, plaintiff has received $190,320.

DISCUSSION

A.    Breach of Contract

To prevail on a breach of contract claim, plaintiff must prove the existence of a contract, its relevant terms, plaintiff's full performance, her lack of breach, and defendant's breach resulting

in damage to plaintiff. <u>Moyer v. Columbia State Bank</u>, 316 Or. App. 393, 402, 505 P.3d 26, 33 (2021). The parties agree the partnership agreement is an existing contract between them and that it provides the relevant terms. In addition, the parties agree that plaintiff has performed under the contract in requesting a return of her capital contribution after the denial of her I-526 petition. The parties disagree as to whether defendant has breached its obligations in failing to provide a refund and thus whether plaintiff has suffered any recoverable damage.

The Oregon Supreme Court provides the analytical framework for interpreting the contract provision outlining the return of a limited partner's capital contribution in the event the limited partner's I-526 petition is denied:

> To interpret a contractual provision, including a restrictive covenant, the court follows three steps. First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.
>> "When considering a written contractual provision, the court's first inquiry is what the words of the contract say * * *. To determine that, the court looks at the four corners of a written contract and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law." <u>Eagle Industries, Inc. v. Thompson</u>, 321 Or. 398, 405, 900 P.2d 475 (1995) (citations omitted).
>
> <u>See also</u> ORS 42.230 (in construing a document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted").

<u>Yogman v. Parrott</u>, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997).

If the contract provision is ambiguous, courts proceed to the second step, examining extrinsic evidence of the contracting parties' intent. <u>Id.</u> at 325 Or. at 363, 937 P.2d at 1022. Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning. <u>Id.</u> at 325 Or. at 363–64, 937 P.2d at 1022. If the provision remains ambiguous after

this step, courts then rely on appropriate maxims of construction. Id. at 325 Or. 364, 937 P.2d at 1022.

As noted above, section 3.1(a)(iv) of the partnership agreement provides in the event of denial of a limited partner's I-526 petition for appropriate reasons, defendant shall use "commercially reasonable efforts," "to the extent of available funds," to return the $550,000 contribution and fees to the limited partner. The agreement does not define available funds nor commercially reasonable. Although the record demonstrates the Partnership had access to funds sufficient to cover the requested return,[2] reading the agreement as a whole, it is not clear whether simple access to cash equates to "available funds."  As noted, the record reflects that the project was significantly undercapitalized due to market conditions. Also noted above, the agreement provided distributions from the project, including upon dissolution, were to be made to limited partners "**pro rata** in accordance with their capital contributions, until each Limited Partner has received aggregate distributions equal to his or her accrued and unpaid Preferred Return, plus any accrued and unpaid Bonus Return owed to such Limited Partner." Nonetheless, the agreement also noted "**Except in cases where … a limited partner's Form I-526 … has been denied** … No Partner shall have the right to seek to withdraw from the Partnership or to require that the Partnership redeem all or any portion of such Partner's Interest." ECF 39-1, Ex G at Freelingos000074 (emphasis added). Thus, the agreement is unclear whether a refund is required if cash is on hand despite the fact that the project is undercapitalized and limited partners are only entitled to a pro rata share of distributions.

The parties offer competing interpretations of the agreement. In essence, plaintiff asserts the contract requires a return of her contribution if the Partnership has available cash on hand and

---

[2] See, e.g., ECF 39-1, Ex G at Freelingos000226 (indicating as of December 7, 2022, potential cash to distribute to partners includes $6,500,000 in cash on hand).

it must do so in a reasonably timely form and manner. The record shows that the partnership had cash on hand from investors in the EB-5 program. Indeed, defendant notes this money was kept in a separate account to be deployed to project development costs.

Defendant asserts the liquid assets were at risk, as required by the EB-5 Investor Program,[3] because they were dedicated or essential to the project and were needed as equity to secure loans to complete the project. Accordingly, until the project is fully funded, defendant contends that funds were not available under the agreement.

Both parties reasonably present, in context of the agreement, more than one meaning for the term "available funds." Accordingly, the Court finds the term ambiguous. As such, the Court considers whether extrinsic evidence can resolve the ambiguity.

In this case, it is undisputed that plaintiff is the only one of 42 limited partners whose I-526 petitions were denied to seek a refund. Defendant asserts practical performance under the contract thus shows one limited partner was not intended to cut in line in front of other limited partners. However, defendant offers no evidence as to why the other investors did not seek a return of funds or even affidavits showing that other investors in fact did not seek a refund. The record does not support a finding that practical performance supports defendant's preferred interpretation.

---

[3] See 28 U.S.C. § 1153((b)(5)(F)(v) (allows new commercial enterprises within the United States for purposes of maintaining investors' "capital at risk"); 8 C.F.R. § 204.6(j)(2) ("To show that the petitioner has invested or is actively in the process of investing the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital."). Of course, these provisions would no longer apply to plaintiff whose application was denied and thus she was no longer required to have capital at risk. This would only have application if the return of funds would deplete the project development account of all capital at risk of jeopardizing the project as a whole for inclusion in the program. As noted above, there were 52 investors in the offering and plaintiff is the only limited partner to seek a return of funds due to a failed application out of the 42 denied applications.

Both parties point to the offering memorandum as extrinsic evidence in support of their preferred interpretation. The memorandum states that "the Project Owner shall have the right to pledge the Property and any other Partnership assets as security for any such capital or financing transaction." ECF 39-1, Ex G at Freelingos000226. However, defendant concedes it was unable to secure financing. See Declaration of Matthew Brown (ECF 43) at ¶ 13. 15. Thus, the right to pledge assets does not support defendant's preferred interpretation either. Defendant concedes the remaining cash funds were dedicated to "costs yet to come." ECF 42 at p. 17. As noted above, the partnership has been dissolved and thus there are no costs to come that would provide support for defendant's preferred interpretation.

On the other hand, as plaintiff notes, the offering memorandum anticipates loss of investor income through denial of I-526 petitions and specifically warns investors that it will seek to replace any such withdrawing investor but may be unable to do so, resulting in failure to raise adequate funds for the project. ECF 39-1, Ex. C at FREELINGOS000032. The memorandum also warns the lengthy timing of the visa process could delay the project in seeking additional replacement investors. This supports plaintiff's preferred interpretation that if specifically unallocated cash is on hand, it would be used to provide refunds to investors whose petitions are denied.

Although defendant had hoped to retain all cash provided by investors to fund the project, any interpretation of the agreement that does not support a finding that the available cash on hand is not available for purpose of satisfying section 3.1(a)(iv) of the partnership agreement is not reasonable now that the partnership has dissolved. Defendant asserts all investors must get in line for distribution of remaining assets and that plaintiff cannot now jump to the front of the line. However, plaintiff is not now jumping to the front of the line. She invoked her contractual right to a refund and just like a secured creditor, she now has priority to the available funds as the only

investor to invoke this provision. A review of the extrinsic evidence supports plaintiff's interpretation of the subject provision so that the Court need not resort to maxims of construction such a construing the agreement against defendant as the drafter. As such, plaintiff is entitled to summary judgment on her breach of contract claim and the Court need not reach the alternative claim of breach of the implied covenant of good faith and fair dealing.

B.     Damages

Although plaintiff seeks only return of her investment, defendant challenges the claimed damages in its own motion for summary judgment. Plaintiff seeks return of her unpaid capital contribution and administrative fee along with pre- and post-judgment interest and attorney's fees. Plaintiff also seeks "direct, incidental, and consequential damages."  First Amended Complaint (ECF 8) at ¶¶ 36, 44-46. During discovery, plaintiff clarified she is seeking $256,254.56 in loss of use of the funds as a result of an inability to use her refund regarding the purchase of investment properties. ECF 50-4 at pp. 4-5. Plaintiff also claims she suffered damages related to undue stress. Id. at p. 6. Plaintiff now concedes she is not requesting emotional distress damages nor an award of attorneys' fee. ECF 54 at p. 8, n.4.  Accordingly, plaintiff seeks $334,680 as to the remaining amount due for her capital contribution and administrative fee and $256,254.56 for the loss of use of funds. There is no dispute that by prevailing on her breach of contract claim, plaintiff is entitled to the remaining capital contribution and administrative fee. However, the parties disagree as to whether plaintiff may obtain damages related to the loss of use of those funds.

Setting aside the issue of when plaintiff may have become entitled to the funds, given that it was not until the partnership dissolved that any questions of fact were eliminated regarding the interpretation of the term "available funds," the Court finds that plaintiff may not recover for the loss of use of those funds. To establish damages under breach of contract, plaintiff must show that

her harm was both the factual and the foreseeable consequence of the defendant's conduct. Wilcher v. Amerititle, Inc., 212 Or. App. 498, 506, 157 P.3d 790, 794 (2007). As such:

> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach.

Cont'l Plants Corp. v. Measured Mktg. Serv., Inc., 274 Or. 621, 625, 547 P.2d 1368, 1371 (1976) (citing Hadley v. Baxendale, 9 Exch. 341 (1854)).

Plaintiff asserts between November 2022, and May 2023, she purchased four properties as part of her personal real estate investment business in hope of flipping them for a profit. Plaintiff also asserts she had to use financing instead of her own funds to purchase these properties because defendant did not return her investment in their partnership when requested on December 14, 2022. Thus, plaintiff asserts defendant is liable for her monthly mortgage costs as well as diminished income and profitability of the properties. Even assuming plaintiff was entitled to an immediate return of her investment despite the ongoing appeal of her I-526 petition and the ongoing partnership, one of the properties was purchased prior to the request to return funds. In addition, there is no dispute that plaintiff did not inform defendant she was engaged in a real estate investment—she merely claims they "knew" she was an investor. Plaintiff does not provide evidence to support that defendant knew she was an investor beyond investing in their partnership and thus it was not foreseeable to defendant at the time of contracting that she would need her funds returned to her in order to engage in other investments. Indeed, plaintiff's argument that she was an investor suggests that even if her visa application had not been denied she would have still invested in real estate relying on financing since she would not be entitled to the return of her funds. Put simply, plaintiff fails to present an issue of fact as to the foreseeability of damages

related to her real estate investments tied to the failure to return her investment in defendant's partnership. See, e.g., Senior Ests., Inc. v. Bauman Homes, Inc., 272 Or. 577, 590, 539 P.2d 142, 148 (1975) (Court reversed jury verdict awarding excess interest and refinancing charges related to breach leading to inability to use proceeds to repay outstanding notes of which defendant had no notice). Defendant here simply had no reason to know that plaintiff would invest nearly $2,300,000 in real property in Arizona following the denial of her I-526 petition Accordingly, plaintiff is not entitled to recover $256,254.56 for the loss of use of funds even assuming she could precisely calculate such losses and trace them to the loss of the timely return of her investment with defendant. To that extent, defendant is entitled to summary judgment.

As noted above, plaintiff seeks pre-judgment interest despite also seeking loss of the use of her capital contribution. Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 311 n. 2 (1987). Whether prejudgment interest is permitted in a particular case is a matter of statutory interpretation, federal common law, and, in some instances, state law. See Monessen Southwestern Ry. Co. v. Morgan, 486 U.S. 330, 337–38 (1988) (examining congressional intent, federal common law, and state law in recognition of prejudgment interest). The parties do not address pre-judgment interest in either motion for summary judgment. Although plaintiff apparently seeks prejudgment interest dating back to her initial demand for return of her contribution, given that plaintiff authorized an appeal of the denial of her visa application, it cannot be determined from the record when the claim accrued. Once the partnership dissolved, even if the appeal were still pending, as a practical matter, the claim at least accrued at

Page 12 – OPINION & ORDER

that point. Because the record is not developed on this issue and the parties do not address whether prejudgment interest is permitted, the Court declines to rule on this specification of damage.

<u>CONCLUSION</u>

Plaintiff's motion for summary judgment (ECF <u>39</u>) is granted and defendant's motion for summary judgment (ECF <u>49</u>) is denied in part and granted in part. The Court will instruct the Clerk to enter judgment in favor of plaintiff and against defendant in the amount of $334,680. However, the parties are invited to address, within 14 days from the date of this order, whether any issues remain for resolution including an award of pre-judgment interest before a judgment is entered.

DATED this 4th day of March, 2025.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge